My name is Judith Blatt. I'm here representing the petitioner Sushitra Vaid. She has two cases before the court this morning. One is a denial of a very old political asylum case from the Fiji Islands. That case was filed in 1992. The second is the denial of a timely motion to reopen based on the fact that when that motion to reopen was filed, there was not an immediate visa petition available to her, and I concede that point. So when I first approached the case, my hope was that it would be reviewed under prosecutorial discretion. The court obviously knows that because I filed my last-minute motion trying to get the court to force the government to make that review, and, of course, perhaps the court lacks jurisdiction. Regardless, that motion was denied. As a bit of background, this woman entered the United States in the 1990s. Did she have any abuse of discretion in denying the motion to reopen because she had no visa? No, I'm getting to that. I don't concede that. I've read what I said. That's what it sounded like to me, too, but. No, I conceded that perhaps this Court did not have the authority to force oil to review for prosecutorial discretion. I think that's probably more than perhaps. So I wouldn't spend time on that. I'm not. But I think that there is some curiosity in terms of that obviously now she's begun some new process and we want to know what that is and what's the, you know, we have to decide this case on the merits, but deciding this case on the merits, does it have any effect on the other and what's going on? If this case is denied, she's deported. She currently has, and I filed a 45-day motion to, motion for an extension on my opening brief. Attached to that 45-day motion was proof of the filing of the visa petition, proof of the filing of the green card application. Those are all approved. I don't think there's any, any disagreement from Mr. Conway or his, or his staff that those petitions have been approved. The question is the timeliness of their filing. Now, the motion to reopen had to be opened within those 90 days or it would have been untimely. So I would. You said she filed her initial asylum application in 1992? Yes, Your Honor. And it was. So why has it taken her 20 years to get to the point where she's at now? It was adjudicated in 2003. So even though she. The agency sat on it for 11 years? So even though she's under a 90-day time period to file a motion to reopen, the agency sat on a political asylum application for 11 years. Well, she didn't complain because she got to be here for all that time, too. Well, that's true. And she's been here for over 20 years. Was that as a result of the fact that they were investigating and subsequently prosecuted the lawyer who prepared her asylum application? I'm not a witness in this case, Your Honor, but I have seen through my, through time between the 87 coup and a lot of Fiji asylum applications, they didn't get adjudicated until the 2000s. I don't know what happened in the San Francisco Asylum Office, and I don't know if this is nationwide. No, that wasn't my question, because, counsel, I have to apologize. We have so many of these. Sometimes I get the facts confused. But isn't this the case where she filed a false application through this lawyer who was subsequently convicted of doing this for a number of his clients? I would argue, and actually, Mr. Conway and I discussed this also, it was not addressed by the judge, by the immigration judge, and it was not addressed by the lawyer. Well, it's a simple yes or no question. No, Your Honor. Is this the case involving the lawyer who was subsequently prosecuted? Not to my knowledge. I don't think there was even a lawyer involved. Well, I think she filed a false asylum application. And then she was allowed to do another one. No. That's incorrect. The decision of the immigration judge in the 2007 file, there's one at 134. It begins at 134. The credibility determination is at ‑‑ I'm sorry. Well, let's take a look at page 3 of the immigration judge's ruling. Yes, Your Honor. This is where he refers to a Mr. Hiralal who was arrested and prosecuted for filing fraudulent immigration claims, in particular claims for asylum. And then the immigration says, not unexpectedly, therefore, Exhibit 2A and the declaration of it contain facts which are patently false, as the respondent admitted in the course of removal proceedings. Most of the false statements deal with her ex‑husband's situation in Fiji. His position in Fiji with the Indian High Commission, which never existed, and his connection with the National Federation Party, which was nonexistent as well. That's correct, Your Honor. So isn't the answer to my question yes? No. This is the case in which the lawyer who originally prepared her asylum application submitted a fraudulent application. First of all, I don't think Hiralal was a lawyer. Second of all, if you look at page 11, there's nothing inherently unworthy of belief in terms of the respondent's credibility as it relates to her case in chief. I don't understand why you're biting me on this point. This is before the real idea. I asked you what I thought was a fairly straightforward question, and you just won't answer it with a truthful answer. If this judge had found her to be not credible. That's not what he asked you. And so by dancing around this, your credibility is going down with every time you're not answering the question and trying to convince us we're on the wrong case. You're the one that's either on the wrong case or, you know, I mean, we're both on the same case. And it's your case. Yes. I thought I was concentrating on the board's decision. The immigration judge apparently found that she had come clean, that she was not responsible That's not the question, counsel. The factual question is, does this case involve a lawyer who was found to have been filing false applications? The lawyer. Is that true or not true? Herolal is not an attorney. It's a preparer that I don't know whether he was prosecuted. So you're now arguing that it wasn't somebody filed false applications, but he wasn't a lawyer. Yes. But the answer to Judge Tallman's simple question was, no, Your Honor, it wasn't a lawyer, it was Mr. Herol, but he was not a lawyer. Yes, Your Honor. That's the right straightforward answer. Isn't that correct? Thank you, yes. Do you understand that when you're in appellate arguments or in the district court or any court, if you lose the credibility with the court, your client suffers immensely? I apologize. You should. All right. Now, let's move on. Well, I have reviewed the standards. Why don't we wait and hear from the government so you don't dig a deeper hole for yourself or your client? Okay. Thank you. Good morning, Your Honor. My name is Kevin Conway. I'm here to represent the Attorney General in this matter. I'll address what seems to be the Court's most important priority. Yes. My question, to just focus so we don't wander off into collateral issues. Your brief, answering brief 35 and 36, said that the procedure that was available was to file a motion to reopen with the board due to changed circumstances in effect. But I noted that in that quote that you had from the rules, it said jointly, it needs to be jointly made. And I understand that the government won't join in that motion to reopen. Is that correct? It only has to be jointly made, Your Honor, when it's out of time. The initial motion to reopen that the Respondent filed was timely filed, and that was – it didn't require a joint motion at that point. Okay. So just to simplify then, if that's the situation, what can this petitioner do to get her current status back before the board so that she has a shot at getting the adjustment of status? I think that the current situation is there's an I-130 application that was filed. That currently has not been approved, to my knowledge. It was filed, but it has not been approved. It is actually in what they call the interview stage, testing and interview stage, which to my knowledge has not been completed yet, which means that the I-130 is not approved. It's filed, but not approved. That is a precursor or a prerequisite to an I-485 application being adjudicated. Now, in order for – once this I-130 – my understanding of the process, and I'm not an ICE attorney, but one of the – my understanding is that the I-130 must be approved first. At that point, then the petitioner has to go to – well, she has two options. She can be removed to her country and follow up through consular – through the consular process because the I-130 is not currently approved, and so a visa is not available to her. If the I-130 does get approved before she's removed, I believe that she can then petition ICE, Immigration and Customs Enforcement, to reopen, jointly reopen before the board. I think those are the only two options that are available. If ICE – So, on the merits of this case, if she were to lose this – let's say that hypothetically right now, how would that – how does that affect that other – does that make her ineligible for the other procedure, or does it just put her at risk for being deported and – even though no one seems to get deported? It puts her at risk of being deported, certainly. But if she got deported, she still doesn't lose that other application? No, she does not because – but she would have to pursue it through consular – through the consular, and I believe she would have to get a waiver of If she – it denies her petition for review, then she will be removed, and once you're removed, you have to then, I believe, waive the inadmissibility to get back into the country. So she would be stopped at the border without that, even though the I-130 might have been approved. So how long has she been waiting for action on her application for adjustment of staff? I don't know when the actual application was filed. The last things that I saw were the I-485 was – in the I-130s were sent – those applications were sent separately to the components that take care of meeting the local offices. The last dates that I saw were sometime in 2008 and one sometime in 2009. So just to help us understand this, we've got – this is not an unusual situation we find ourselves in, is that the cases come to us, things have changed in the process, this complex set of rules and regulations dictate what an applicant can achieve either with us or within the agency. Now, a number of these cases have gone to mediation. We have our mediators who have tried to get the government and the asylee or the asylum seeker to get over the procedural hurdles and see if you can come to an individualized satisfactory result. And I understand that there's been some mediation in this case, but that there was some problem that the government seemed to think that this petitioner was engaged in some kind of fraudulent activity. So I think what we're all interested in finding out is, is there some impediment – because the IJ didn't find her incredible, found her credible. Is there some impediment to the government and the petitioner sitting down and seeing if there's a way to work it out now that she does have her adjustment application on file? And it's just a question of whether the I-130 is going to be approved. I mean, given the length of time she's been in this process. I was not a party to the mediation, so I don't know why they weren't able or what hurdles they were not able to overcome. There is no question that this woman engaged in fraudulent – in fraud. So does that put a mark on her back so that you're moving slower on approving the visa? Well, I think that's the reason that ICE will not – and I'm saying this only because that's what seems to have happened when we – in our opposition, I think we at least intimated that ICE would not join in a motion to reopen at this time because – well, would not exercise prosecutorial discretion. I shouldn't say that they won't join in a motion to reopen. They were not inclined to exercise prosecutorial discretion because fraud is one of their red flags, so to speak. Okay. So that's – so accepting that we can't tell you how to exercise your prosecutorial discretion, that the fact of that fraud, you know, and that attorney or non-attorney or whatever the situation is, that she might be in a different position if that weren't part of the case. If it were just the second application and the issues about whether it's persecution or, you know, any of that. That's – I think that's correct, Your Honor. And also, other than the representations of counsel, I don't know that there is any evidence in the record that the daughter has actually been naturalized. Okay. Well, I was going to ask about that since we had so much trouble getting to the bottom of the first information. Do you know whether the daughter's been naturalized? I do not know, Your Honor. The only thing I've seen is a naturalization application. So none of the applications have been approved yet, to my understanding or to my knowledge. Now, I'm not saying that counsel is not being forthright, but I just don't know and I haven't seen that. But wouldn't that be something that you would logically check on? Because let's say if she hadn't been naturalized, then you could stand up here and say, as an officer of the court, I checked and she hasn't been naturalized, so we're really talking about a fiction. I have checked with, I have actually contacted SIS, who now is the one, is the organization that, or the arm of DHS that adjudicates I-130 applications, and asked them the question of where are these, the two applications that I know of, the I-130 and the 485, where they were, and I haven't gotten a response from them to this point. Well, it's kind of frustrating because, I mean, I'm assuming that the fraud component of this, would that, that wouldn't justify them treating her slower than anyone else, though, would it, in the I-130 application? It would not, are you saying, Your Honor? It would seem it wouldn't. I mean, the fraud, that part of it doesn't disqualify her for the I-130, does it? I don't think, I don't believe that it does, especially given the fact that the immigration judge did not review that. Because what qualifies it for is she has the naturalized daughter, right? Well, that's one of the, there's a myriad of reasons of why she might not. I mean, I don't even know what the, even if the daughter is naturalized, what steps she has taken. There are things that she must do, because the I-130 application is not Ms. Lott's client. The I-130 applicant is the daughter. So we don't know what steps she has taken to do anything. She is not a party to this litigation at all, other than the fact that she now is, because she was severed from the litigation a long time ago. So she's no longer even a part of this. She's not Ms. Lott's, to my knowledge, client, and she's not a party, she's not before the court. So I don't know what the process, where she is in that process. Okay. So let's just assume the following set of facts. That the, assume that the I-130 was filed and it's just a matter of bureaucratic processing. I don't use that in a negative fashion, but it does take time to process currently. But it has been filed and it's on the way to approval, or could be approved. And that the daughter is naturalized. Is there a process that, under those facts, this petitioner can get a hearing before the I think if all those assumptions are true, then that would put ICE in a much stronger position, or would put the petitioner in a much stronger position than to request from ICE to join in a motion to reopen. I believe that's the only way that she can now get back before the agency, because she is out of time. Any motion to reopen would now be out of time. So what is so that she has no relief, then, just to file a new application and start all over again? No, I believe she can request from ICE, the local office of ICE, which is the San Francisco office, to join in a motion to reopen before the board. So there would have to be a joint motion. It would have. At this point, I believe there would be. Yes, Your Honor. Okay. Now, would it be productive, then, for us to have you folks invoke the mediation services again to see if that can be worked out? I think that it's probably not. I think we might be in mediation for quite a while, if that was the case, because none of these applications have been approved. Well, you don't know. Are you now telling us you do know that they haven't been? No. Well, I looked on their website. You know, SIS has a website. You can go and you can plug in the application numbers, and it will tell you what stage it's in, and that's what I have. I have a printout of it. Okay. And it's the last things that happened on the I-585, I think, May of 2008, and the I-130 was sometime in 2009. And that's outside the petitioner's control. It's her daughter who has got to move it forward. But if the daughter's filed everything, it's just now in the hands of the agency. Well, like with the I-130, there has to be an interview. But it's all in the hands of the agency. It's nothing that the petitioner or her daughter can do. She just has to wait out the process that grinds through the agency side of things. Is that right? That's correct, Your Honor. But the mediation that previously was undertaken in this matter occurred after 2009, did it not? I believe it did. However, because none of the applications had been approved at that point, there was nothing that could be done, I don't believe. Those have to be approved before. I guess to ask my question a different way, nothing has changed since the last time you mediated, as far as you know. As far as I know, yes, Your Honor. Okay. But it would seem like in two years something should change. Well, with hope, actually. Either yea or nay. Yeah. But we don't know what – it could be the daughter that – and I don't know the dynamics of the family situation, but it could be the daughter that has not done what she needs to do, and I don't know what that might entail. Okay. All right. Thank you. Thank you. Do I need – do you – I'm sorry. I was going to say you need to be heard on the merits, but that's not the case. No. Do you have more time? On September 17, 2008, I filed with this Court a motion for an extension of time to file the opening brief. Attached to that motion is the I-130 receipt. You can see that the section – Okay. He's not concessing it was filed. Now he says it hasn't been approved. I have the approval in my hand. It was approved April 21, 2009. Roseanne Perry knew this at the time of mediation. Paul Nietzsche in the Immigration and Customs Enforcement, San Francisco, California, knew this. I filed 10 years of tax returns with Paul Nietzsche. All right. So it's been filed and approved. Yes. Okay. Has the daughter been naturalized? Yes. The category – a green card holder child cannot apply for a parent. You must be a citizen to apply for a parent. So that's why I'm pointing out the category. There's no category for legal permanent resident applying for a parent. So Judge Tallman asked counsel for the government as to whether anything has changed since the last mediation. What has changed? Roseanne Perry has said that it's not – What has changed? What circumstances have changed so that if we – My client is eligible for adjustment of status as we stand here today. And was not at the time of the mediation? I think she was at the time of the mediation also, Your Honor. All right. Go ahead. Has it changed? The only point that I would make is that Paul Nietzsche's denial of a joint or refusal to join me was prior to the Morton Memo, which was my Hail Mary, you know, three weeks ago. I thought maybe the Morton Memo would change their minds. I did speak with ICE in San Francisco prior to filing with this Court and was told by Lisa Calero, who is a very well-respected attorney in San Francisco who actually used to work for the court. I was told by her that once it's with the panel, Joe Park is not where I go. But I'll certainly go back to Joe Park now. I mean, I've been practicing there for 17 years. So based on what Mr. Conway has said, I will go back to Joe Park. Thank you very much. Thank you. Unless there are any other questions. No. Thank you. The case is submitted.
judges: Fisher, Tallman, Callahan